FILED
SUPERIOR COURT
OF GUAM

2025 FEB -6 PH 12: 08

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| JOHN PAUL ESCOBAR and JORDANNA NEDEDOG ESCOBAR,<br><br>Plaintiffs,<br><br>vs.<br><br>ARTHUR SCOTT ROOT JR. dba LOTS OF ART TATTOO STUDIO and JACQUELINE CRUZ ROOT,<br><br>Defendants. | CIVIL CASE NO. CV0157-24<br><br><br>**DECISION AND ORDER**<br>Re: Defendants' Motion to Dismiss |

This matter came before the Honorable Arthur R. Barcinas on November 7, 2024 for a motion hearing on Defendants Arthur Scott Root, Jr., dba Lots of Art Tattoo Studio, and Jacqueline Cruz Root (collectively, "Defendants") Motion to Dismiss ("Motion"). Defendants were represented by Attorney Jeffrey Cook, and Plaintiffs John Paul Escobar and Jordanna Nededog Escobar (collectively, "Plaintiffs") were represented by Attorney Charles H. McDonald II. Upon consideration of the pleadings, the arguments, and the applicable law, the Court **DENIES** Defendant's Motion.

## BACKGROUND

On July 1, 2022, the parties allegedly entered into an Agreement for Purchase and Sale of Business Assets ("Agreement") regarding the sale of Lots of Art Tattoo Studio ("LOA") from Defendants to Plaintiffs for $200,000.00. Plaintiffs allege that, after payment, Defendants

rescinded the contract. Plaintiffs then sued for fraudulent misrepresentation, largely based on allegations that the terms of the written Agreement were different than what the parties had previously agreed to verbally, *e.g.*, that the Agreement would not allow Plaintiffs to acquire the trade name of the company as Plaintiffs allegedly expected. Plaintiffs also sued for declaratory relief as to whether the Agreement is valid, as well as damages for Defendants' alleged unjust enrichment and breach of the implied covenant of good faith and fair dealing. Plaintiffs claim that they did not know what was in the Agreement because they allegedly did not have the opportunity to review the Agreement prior to signing it.

On June 20, 2024, Defendants filed this Motion on the grounds that Plaintiffs had failed to state a claim upon which relief can be granted, arguing that the facts alleged in Plaintiffs' Complaint do not support Plaintiffs' causes of action.

On July 26, 2024, Plaintiffs filed their Opposition, re-asserting their claims for fraudulent misrepresentation, declaratory relief, and breach of the implied covenant of good faith and fair dealing. Plaintiffs made no mention of their claim for unjust enrichment.

On August 9, 2024, Defendants filed their Reply, re-asserting that they did not coerce Plaintiffs into signing the contract, and that Plaintiffs stated in the Complaint that Defendants informed Plaintiffs of the royalty provision before they signed the contract.

## DISCUSSION

The issue before the Court is whether Plaintiffs have sufficiently pleaded claims upon which relief may be granted. The central arguments by the parties focus mainly on the allegations asserting fraud with little discussion of the other causes of action. Defendants assert that there is no fraudulent misrepresentation, arguing that the Agreement shows the final terms of the contract, and that Plaintiffs initialed each page of the Agreement in addition to signing it,

which Defendants claim shows that Plaintiffs read each page before signing. Defendants further assert that the Agreement clearly states at paragraph 13 that Plaintiffs would not be acquiring the trade name of the company, but the right to use the trade name upon payment of a $1,500.00 monthly royalty. Based on these assertions, Defendants argue that they did not make any fraudulent misrepresentation nor conceal any information about the trade name clause. Defendants also assert that Plaintiffs were under no duress to sign the Agreement, nor were they prevented from consulting with counsel prior to signing the Agreement.

## I.     Legal Standard

Guam Rules of Civil Procedure ("GRCP") Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Guam R. Civ. P. 12(b)(6). Guam law requires only a short and plain statement of the claim showing entitlement to relief. *Ukau v. Wang*, 2016 Guam 26 ¶ 52. Whether a plaintiff pleaded or proved his claim by preponderance of the evidence is immaterial at the 12(b)(6) phase; Plaintiff merely has to state sufficient facts to place Defendant on notice of his claim. *Wang*, 2016 Guam 26 ¶ 53.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wang*, 2016 Guam 26 ¶ 26. Beyond this, the Supreme Court has declined the invitation to apply a heightened plausibility standard to local civil proceedings, and it imposes only a liberal notice pleading requirement. *See id.* at ¶ 33. When reviewing a Rule 12(b)(6) motion, the trial court must construe the pleading in the light most favorable to the non-moving party and resolve all doubts in the non-moving party's favor. *Id.* at ¶ 51. In ruling on a 12(b)(6) motion, a court's consideration is limited to the complaint, written instruments

attached to the complaint as exhibits, statements or documents incorporated in the complaint by reference, and documents on which the complaint heavily relies. *Core Tech Int'l Corp. v. Hanil Eng. & Constr. Co.*, 2010 Guam 13 ¶ 29.

## II. Fraudulent Misrepresentation

Under Guam law, there are five elements of fraud: (1) A misrepresentation; (2) Knowledge of falsity (or scienter); (3) Intent to defraud to induce reliance; (4) Justifiable reliance; and (5) Resulting damages. *Ukau v. Wang*, 2016 Guam 26 ¶ 36. "[GRCP] 9(b) provides, in relevant part, that "the circumstances constituting fraud or mistake shall be stated with particularity" and that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." *Id.* ¶ 35. This standard is known as the "who, what, when, where, and how" requirement, and the Guam Supreme Court has held it to be a more heightened standard than the notice pleading typically required by GRCP 12(b)(6). *Id.*

When the parties have reduced the terms of an agreement to a writing, 6 GCA § 2511 prohibits the introduction of any evidence of the terms of the agreement other than the content of the writing, except where a mistake or imperfection of the writing is an issue or where the validity of the agreement is in dispute." *Bank of Guam v Flores*, 2004 Guam 25 ¶ 16-17. However, "this ... does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in [6 GCA] § 2515 [Circumstances to be Considered], or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes ... contracts between parties." *Id.* 6 GCA § 2515 dictates that, "[f]or the proper construction of an instrument, the circumstances under which it is made, including the situation of the subject of the instrument and of the parties to it, may also be shown."

Based on the circumstances of the case, the Court is not confined to the four corners of the Agreement in its analysis, as Plaintiffs dispute the validity of the agreement, and allege fraud based on the circumstances under which the Agreement was made and signed. Viewed in the light most favorable to Plaintiffs as the non-moving party, the Court finds that Plaintiffs have sufficiently met the pleading standard for fraud, for the reasons below.

In the Complaint, Plaintiffs assert that "[a]t the time the Agreement was executed, Defendants knew that Plaintiffs expected to purchase LOA and they knew they were not selling LOA to Plaintiffs because the Agreement they drafted was not an agreement to sell LOA and it was different from what the parties agreed to during their numerous conversations." Compl., ¶ 46. Plaintiffs further assert that "Defendants fraudulently led Plaintiffs to believe that Plaintiffs were acquiring ownership of LOA." *Id.* Plaintiffs allege that Defendants did this by "wrongfully with[holding] and conceal[ing] the true facts from Plaintiffs," which is relevant to the Court's analysis because it speaks to the circumstances surrounding the execution of the Agreement. Compl., ¶ 48.

Plaintiffs allege that, in the time leading up to the execution of the Agreement, they were led to believe that they would be acquiring all of LOA, including the trade name. Plaintiffs allege that, in the week leading up to the execution of the Agreement, the parties met to transfer LOA's business license and permits from Defendants to Plaintiffs, that Defendant Jacqueline "instructed the Plaintiffs to open a business bank account and apply for a credit card machine upon receiving their business license," and that, "[o]n June 29, 2022, Jacqueline informed the Plaintiffs that they would take over operating LOA on July 1, 2022, as she was leaving Sunday, July 3, 2022." *Id.* ¶¶ 17, 20-21. These facts indicate that the LOA trade name was integral to the transfer of the business, as the license, permits, and bank account would all be intended for a

business with that trade name, and it would be reasonable for a purchaser to believe that they would also be receiving rights to the trade name as part of the agreement, there being no verbal or written statement at that point saying otherwise.

Plaintiffs further allege that, on June 30, 2022, "Jacqueline advised Plaintiffs that the agreement papers were being prepared by their lawyer and it would be ready for signing on July 1, 2022, the agreed upon date of Plaintiffs' takeover of LOA. Plaintiffs requested for a copy of the Agreement to review it prior to signing and to consult with an attorney." *Id.* ¶¶ 23-24. There is no indication that Defendants provided Plaintiffs with a copy of the Agreement upon request prior to signing.

Plaintiffs further allege that "[o]n July 1, 2022, Plaintiffs and Defendants met at Ruby Tuesday to discuss the Agreement. Plaintiffs did not have the opportunity to review the Agreement prior to signing it. At the ... meeting, Defendants informed Plaintiffs for the first time that they would like to charge a royalty fee of $1,500.00 per month for the use of the LOA name in addition to the purchase price of $200,000.00." *Id.* ¶ 25. Plaintiffs allege that, when they asked Defendants for time to review the Agreement, Defendant Jacqueline insisted that they sign on the spot because she was leaving in two days, and Defendants represented to Plaintiffs that the Agreement reflected the terms the parties had previously discussed. *Id.* ¶ 26. Plaintiffs allege that they signed due to the time pressure expressed by Defendant Jacqueline and allege that, at the time, they trusted Defendants' representations based on their friendship of more than twenty (20) years. *Id.* Plaintiffs assert that the Agreement they signed did not previously reflect the agreed-upon terms, and allege that they did not even receive a copy of the Agreement until July 20, 2022 when Defendant Jacqueline sent pictures of the Agreement after multiple requests from Plaintiffs. The sudden change in terms without notice would provide the

basis for a possible fraudulent misrepresentation claim, particularly because Defendants added a ticking clock and potentially leveraged the parties' friendship, as that would speak to possible inducement of the Plaintiffs' signatures.

Plaintiffs base their fraudulent representation claim on allegations that Defendants: (1) did not allow Plaintiffs to consult with counsel prior to signing the Agreement; (2) failed and refused to disclose the Agreement until after Plaintiffs paid the purchase price; (3) failed to disclose that the Agreement did not reflect the actual terms of the verbal agreement and understanding between the parties; (4) failed to disclose that Plaintiffs would only acquire LOA's business assets and not its trade name; (5) and failed to disclose that the royalty clause of the Agreement could be terminated upon thirty (30) days written notice. *Id.*

Given the above allegations, the Court finds that Plaintiffs have sufficiently pled their claim for fraud with particularity. GRCP 9(b) provides that the intent to defraud and knowledge of falsity may be averred generally, and Plaintiffs have done so. As to the other elements of fraud, the Court finds that Plaintiffs have sufficiently pled the existence and details of one or more misrepresentations, they have sufficiently pled their justified reliance on said misrepresentation, and they have sufficiently pled the damages resulting from that reliance. By the point of signing, Plaintiffs had already invested $160,000.00 into the purchase of LOA and had been advised by Defendants to take steps to acquire a bank account and licenses that would only apply to a business with the LOA trade name. Compl., at 2-3, Ex. D. It would not be unusual for a reasonable person to believe that they were acquiring the trade name as part of the agreement. Viewed in the light most favorable to the Plaintiffs, the above facts, in combination with the sudden reveal of the royalty provision at signing, the rushed execution of the document, and the failures and delays to provide Plaintiffs with a copy of the signed Agreement

after multiple requests, provide sufficient basis for Plaintiffs to bring a fraudulent misrepresentation claim even under the heightened pleading standard.

Accordingly, the Court **DENIES** the Motion to Dismiss in regards to the fraudulent misrepresentation claim.

Plaintiffs' second claim for declaratory relief requests the Court to rule on the validity of the Agreement. In the Motion, Defendants only spend a cursory amount of time arguing against declaratory relief and cite no case law or statute to support their argument. In fact, the majority of the Motion and Reply seem to be dedicated to arguing against the fraudulent misrepresentation claim, with little to no argument for the other causes of relief. For instance, in the Complaint and Opposition, Plaintiffs argue that the Agreement should be rendered void on the grounds that "the consent was not mutual in that the parties did not all agree upon the same thing in the same sense." Compl., at 8; Opp., at 8. In the Motion and Reply, Defendants make no argument against the consent not being mutual. nor do they make any substantive arguments regarding possible ambiguities in interpretation of the Agreement. Therefore, viewing the allegations in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have provided sufficient notice of their declaratory relief claim against Defendants. Accordingly, the Court **DENIES** the Motion to Dismiss on the declaratory relief claim.

Regarding the Plaintiffs' claim for breach of the covenant of good faith and fair dealing, the Court again finds that Defendants provide only a minimal response to Plaintiffs' claim and then return to arguing against fraudulent misrepresentation. Defendants do argue that the Guam Supreme Court has held that "the relevant case law supports the notion that a 'covenant of good faith and fair dealing ... cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Quijano v. Atkins-Kroll,*

*Inc.*, 2008 Guam 14 ¶ 2, n.2. However, the Court notes that the case quoted by the Supreme Court in the above *Quijano* footnote also holds that "[t]he covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) (citing *Waller v. Truck Ins. Exchange Inc.* 900 P.2d 619 (Cal. 1995)). Plaintiffs cite this same quote in their Opposition, and argue that Defendants' termination of the royalty agreement frustrated their right to receive the benefits of the Agreement. Plaintiffs assert that much of the inventory they purchased was branded with the LOA trade name and that Defendant's termination of Plaintiffs' use of the trade name forced them to cease operations, rebrand, and open a new tattoo shop. The Court also notes that Plaintiffs' allegations indicate that Defendant Jacqueline had assisted the Plaintiffs in acquiring business licenses and permits specific to LOA, and that Defendant Jacqueline had also instructed Plaintiffs "to open a business bank account and apply for a credit card machine upon receiving their business license," which presumably would also have been under the LOA business name. Defendants make no response to this argument or any reference to the covenant of good faith and fair dealing in their Reply.

Therefore, the Court again finds that, read in the light most favorable to the Plaintiffs, Plaintiffs have provided sufficient notice of their claim against Defendants, and Defendants have failed to substantively respond to their arguments. The Court again **DENIES** the Motion to Dismiss in regard to the breach of the covenant of good faith and fair dealing claim.

The final count in Plaintiffs' Complaint is for unjust enrichment. Under Guam law, a person is unjustly enriched if that person receives a benefit at another's expense. *Yoshida v. Guam Transport and Warehouse, Inc.*, 2013 Guam 5 ¶ 69. In their Motion, Defendants do not

make any mention of unjust enrichment, nor do they argue against the claim. Because Defendants have not argued to dismiss the fourth claim for unjust enrichment, and because the Court finds that Plaintiffs have provided sufficient notice of their unjust enrichment claim, the Court **DENIES** the Motion to Dismiss as to Plaintiffs' claim for unjust enrichment.

### III. Leave to Amend

Plaintiffs request leave to amend in the event of dismissal. Defendants argue that amendment would be futile because Plaintiffs have already alleged that they were informed about the royalty clause before signing the Agreement.

Pursuant to GRCP 15(a)(1), a party may amend its pleading once as a matter of course within (1) 21 days after serving said pleading or (2) 21 days after service of a responsive pleading or 12(b), (e), or (f) motion, whichever is earlier. The Court finds upon review of the record that Plaintiffs have passed the time in which to amend their pleading as a matter of course, but under GRCP 15(a)(2), Plaintiffs may still amend their pleading with the Court's leave, which the Court has the discretion to grant freely when justice so requires. There being no dismissal in this case, however, the Court does not find it necessary for the Court to grant leave to amend at this time.

### CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Defendants' Motion to Dismiss in full.

**IT IS SO ORDERED** FEB 06 2025 .

_____
**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**